UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

TINA ROBERTS,

                Plaintiff,

     - against -

GROUND HANDLING, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - X

**ECF CASE**

04 Civ. 4955 (WCC)

**OPINION
AND ORDER**

**A P P E A R A N C E S :**

               ZABELL & ASSOCIATES, P.C.
               **Attorneys for Plaintiff**
               4875 Sunrise Highway, Suite 300
               Bohemia, New York  11716

SAUL D. ZABELL, ESQ.
R. ELIZABETH UREÑA, ESQ.

     Of Counsel

               GREENWALD DOHERTY, LLP
               **Attorneys for Defendant**
               151 North Main Street
               P.O. Box 490
               New City, New York 10956

KEVIN M. DOHERTY, ESQ.

     Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff Tina Roberts brought this action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*, the New York State Human Rights Law, EXEC. LAW §§ 296, *et seq.* ("NYSHRL") and the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161, *et seq.* ("COBRA") against her former employer, defendant Group Handling, Inc. ("GHI"). Plaintiff alleged that defendant: (1) interfered with her rights guaranteed under the FMLA; (2) discriminated against her on the basis of her disability in violation of NYSHRL; (3) failed to provide her with continuing group health plan coverage in violation of COBRA; and (4) retaliated against her for exercising her rights guaranteed under the FMLA. Defendant moved to dismiss plaintiff's first, third and fourth claims pursuant to FED. R. CIV. P. 12(b)(6), and in an Opinion and Order dated March 11, 2005, we granted defendant's motion with respect to plaintiff's third and fourth causes of action. Defendant now moves for summary judgment on plaintiff's remaining two claims, namely: (1) the first cause of action for interference with plaintiff's rights guaranteed under the FMLA; and (2) the second cause of action for disability discrimination in violation of NYSHRL. In addition, plaintiff moves to strike certain paragraphs of defendant's Rule 56.1 Statement and its annexed exhibits, as well as certain paragraphs of the affidavit of John Barrella ("Barrella"), all of which defendant submitted in support of its motion for summary judgment. For the following reasons, defendant's motion for summary judgment is denied and plaintiff's motion to strike is granted in part and denied in part.

## BACKGROUND

Viewed in the light most favorable to plaintiff, the record reveals the following relevant

facts.[1]  GHI is a New York corporation that provides various services to airlines that operate out of

Westchester County Airport, including catering and cleaning services, ground crew assistance and

gate boarding and bag loading services.  (*See* Pl. Aff. ¶ 2.)  On April 21, 1986, GHI hired plaintiff

as a customer service agent and promoted her to Operations Manager in January 1996.  (*See id.* ¶ 1;

Barrella Aff. ¶ 6.)  As an Operations Manager, plaintiff was one of four individuals responsible for

the timely and effective operations of the aircraft operating out of Westchester County Airport.  (*See*

Barrella Aff. ¶ 6.)  Prior to 2000, plaintiff was supervised by Barrella and, thereafter, by Edward

Thorton ("Thorton"), who was himself supervised by Barrella.  (*See id.* ¶ 8; Pl. Rule 56.1 Stmt. ¶ 5.)

In 1987, plaintiff was diagnosed with chronic renal failure which ultimately developed into

end-stage renal disease.[2]  (*See* Def. Rule 56.1 Stmt. ¶ 6, Ex. D (Pl. Dep. at 36); Pl. Rule 56.1 Stmt.

¶ 6.)  From 1987 through the end of 2002, plaintiff received continuous ambulatory peritoneal

dialysis.[3]  (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 37); Urena Decl., Ex. S (Saitta Dep. at 13-

---

[1] *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, No. 04-6282-CV, 2007 WL 29977, at *5 (2d Cir. Jan. 5, 2007) ("'In assessing the record to determine whether there is [a genuine issue of material fact], the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'") (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)); *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486 (2d Cir. 2006) ("We [must] . . . constru[e] the facts in the light most favorable to the non-moving party . . . ."); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03 Civ. 1895, 2007 WL 39301, at *5 (S.D.N.Y. Jan. 8, 2007) ("In determining whether a genuine issue of material fact exists, the Court must examine all evidence in the light most favorable to the nonmoving party.").

[2] Chronic renal failure is permanent damage to the kidneys that results in loss of normal kidney function.  End-stage renal disease occurs when the kidneys permanently fail to work and the individual can no longer live without dialysis.  (*See* Urena Decl., Ex. S (Saitta Dep. at 5).)

[3] Ambulatory peritoneal dialysis can be performed by the patient at her home or work place. In September 2002, plaintiff began to receive hemodialysis which required her to receive treatment at a dialysis center located at Sound Shore Hospital in New Rochelle, New York.  (*See* Pl. Aff. ¶ 8, Ex. E.)

15).)  During this period, GHI provided her work breaks four times a week, twice a day during which she would administer the dialysis in either Barrella or Thorton's office.  (*See* Def. Rule 56.1 Stmt. ¶ 6, Ex. D (Pl. Dep. at 45, 48); Pl. Rule 56.1 Stmt. ¶ 6; Urena Decl., Ex. Q (Thorton Dep. at 27-28).)

GHI also allowed plaintiff multiple leaves of absences as a result of her kidney condition.  (*See* Def. Rule 56.1 Stmt. ¶ 7; Pl. Rule 56.1 Stmt. ¶ 7.)  Specifically, plaintiff took leave from December 6, 1989 to January 14, 1990, June 1990 to September 1990[4] and February 8, 2002 to March 11, 2002.  (*See* Def. Rule 56.1 Stmt. ¶¶ 7, 8, 12; Pl. Rule 56.1 Stmt. ¶¶ 7, 8, 12; Barrella Aff. ¶ 9.)  In addition, between 1990 and 2000, plaintiff was hospitalized on approximately ten occasions for reasons attributable to her kidney condition[5] and, on each occasion, GHI allowed plaintiff medical leave and granted her immediate reinstatement upon completion of her treatment and medical clearance for her to resume work.  (*See* Def. Rule 56.1 Stmt. ¶ 9, Ex. D (Pl. Dep. at 41-42); Pl. Rule 56.1 Stmt. ¶ 10.)  At all relevant times, Barrella was responsible for handling plaintiff's requests for medical leave and other medical accommodations.  (*See* Barrella Aff. ¶ 8.)

On September 22, 2002, plaintiff was hospitalized due to an infection surrounding the

---

[4] In June 1990, plaintiff received a kidney transplant and took leave until September 1990. (*See* Complt. ¶ 27; Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 39).)  Plaintiff's transplanted kidney lasted approximately ten years.  (*See id.*)  In 2000, after the transplanted kidney had failed, plaintiff returned to dialysis treatment.  (*See* Complt. ¶ 28; Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 47-48).)

[5] During the time plaintiff had the transplanted kidney, she experienced "rejection periods" and several infections, which required hospitalization.  (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 41).)

catheter[6] and the onset of peritonitis,[7] both of which were attributable to her kidney condition. (*See* Complt. ¶ 39; Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 43), Ex. F (Saitta Dep. 17), Ex. G (Pisano Dep. at 16-18).) On September 24, 2002, she called Barrella and advised him of the situation and indicated that she was going to miss work that day. (*See* Pl. Aff. ¶ 5.) The next day, plaintiff called Barrella and advised him that she was still in the hospital and was going to be absent from work again. (*See id.* ¶ 6.) Then, on September 26, 2002, plaintiff's sister called Barrella and informed him that plaintiff was extremely ill and could not return to work at that time. (*See id.* ¶ 7; Barrella Aff. ¶ 11.)

On September 26, 2002, Barrella sent plaintiff a letter stating:

I would like to thank you for the call I received from your sister on your behalf updating your status. I am very sorry to hear about your situation. The Company realizes you are going through a very difficult time and does not want your work responsibilities to divert your attention from focusing on your health and recovery. Therefore, at this time I am relieving you of all your Operation Manager responsibilities.

Once you are feeling better and are cleared to work, it will be necessary for you to contact me before returning. As always if you have any questions please do not hesitate to contact me.

(*See* Def. Rule 56.1 Stmt., Ex. I.) On October 3, 2002, Barrella sent plaintiff a second letter stating:

This letter is to provide you with an update on the status of your health benefits and information so you can make decisions concerning your condition. . . . Per our conversation today you informed me you do not wish to use any more vacation time and instead wish to seek disability. Enclosed is a disability form for your completion. . . .

---

[6] Ultimately, plaintiff required surgery to remove and replace her catheter. (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 49).)

[7] Peritonitis is inflammation of the peritoneum (the serous membrane which lines part of the abdominal cavity and some of the viscera it contains). *See* Univ. of Md., Online Medical Database, http://www.umm.edu/altmed/ConsConditions/Peritonitiscc.html.

4

The Family and Medical Leave Act (FMLA) provides certain employees with up to 12 workweeks of unpaid, job-protected leave a year and requires group health benefits to be maintained during the leave as if employees continued to work instead of taking leave. I also have enclosed an informational brief explaining the purpose and eligibility requirements for both the employer and employee under the FMLA.

Effective October 1, 2002 the Company is designating your medical absence as FMLA leave. During this time the Company will continue to maintain group health insurance, including dependent coverage on the same terms as if you continued to work.
. . .
As always if you have questions please do not hesitate to contact me.

(*See* Def. Rule 56.1 Stmt., Ex. C; Pl. Aff., Ex. B; Barrella Aff. ¶ 12.)   Defendant enclosed a twelve-

page explanation of the FMLA entitled "Compliance Guide to the Family and Medical Leave Act."[8]

(*See id.*)  It also enclosed an application for New York State Disability benefits for which plaintiff

applied and ultimately received through the end of the year.  (*See* Pl. Aff., Ex. B.; Def. Rule 56.1

Stmt. ¶ 19; Pl. Rule 56.1 Stmt. ¶ 19; Barrella Aff. ¶¶ 12-13.)

Plaintiff remained on leave until January 6, 2003 at which time she provided defendant with

medical clearance from her two treating doctors, Dr. Richard Pisano ("Pisano"), her internist, and

Dr. Richard Saitta ("Saitta"), her nephrologist.  (*See* Def. Rule 56.1 Stmt. ¶¶ 22, 23, 26, Exs. D (Pl.

Dep. at 74), L, M, F (Saitta Dep. at 4), G (Pisano Dep. at 4, 10; Pl. Rule 56.1 Stmt. ¶¶ 22, 23, 26;

Barrella Aff. ¶¶ 14-15.)  Although plaintiff did not actually return to work until February 19, 2003,

---

[8] Plaintiff claims that she did not learn that defendant designated the leave in October 2002 as FMLA leave until defendant terminated her employment in the summer of 2003.  (*See* Pl. Mem. Opp. Summ. J. at 3.)  Although plaintiff testified she "never associated [her] time off [commencing on October 1, 2002 with the FMLA]," but rather thought that she was using sick time,  (*see* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 161-62,) she received the October 3 letter from Barrella indicating that the leave was in fact pursuant to the FMLA, considering that she produced it during discovery. (*See* Pl. Aff., Ex. A; Def. Rule 56.1 Stmt. ¶ 18; Pl. Rule 56.1 Stmt. ¶ 18.)  In addition, plaintiff testified that she received the letter's attachments and it appears that, at one point, she actually testified that she received the letter itself.  (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 68-69, 162, 158-59).)

plaintiff used FMLA time only to January 6, 2003.[9]  (*See* Barrella Aff. ¶ 16; Pl. Mem. Opp. Summ. J. at 4; Pl. Aff. ¶ 8; Def. Rule 56.1 Stmt. ¶ 25, 26; Pl. Rule 56.1 Stmt. ¶ 24, 25, 26; Urena Decl., Exs. P (Barrella Dep. at 60), I, J; Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 74).)  During this time, the three other Operation Managers were required to work overtime in order to cover plaintiff's responsibilities.  (*See* Def. Rule 56.1 Stmt. ¶ 27; Pl. Rule 56.1 Stmt. ¶ 27.)

Upon plaintiff's return to work on February 19, 2003, plaintiff provided Barrella a memorandum requesting an accommodation to not work on Mondays, Wednesdays and Fridays between the hours of 3:30 p.m. and 7:00 p.m. so that she could receive dialysis treatments.[10]  (*See*

---

[9]  Plaintiff was required to complete "an action plan" prior to returning to work as a result of disciplinary issues that arose before plaintiff took leave in September.  (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 77, 81); Complt. ¶¶ 31-38; Pl. Aff., Exs. C, D; Pl. Rule 56.1 Stmt. ¶ 24; Urena Decl., Ex. P (Barrella Dep. at 60-61), Ex. Q (Thorton Dep. at 36).)  Specifically, on September 12, 2002, Thorton approached plaintiff regarding her coworkers' allegations that she had an "attitude problem."  Plaintiff believed that Thorton was rehashing incidents that the two had already discussed.  (*See* Complt. ¶ 32; Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 28-29).)  During their meeting, plaintiff requested to be excused several times but Thorton denied her requests and the meeting lasted over a hour-and-a-half.  (*See* Complt. ¶ 34.)  Plaintiff became upset and stated, "Yes Masta, What do you want me to say, I quit?"  (*See id.* ¶ 35; Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 31).)  As a result, plaintiff was suspended for one week with pay for her unprofessional conduct and was required to develop an anger management plan prior to returning to work.  (*See* Complt. ¶¶ 37, 38; Def. Rule 56.1 Stmt., Ex. D. (Pl. Dep. at 29-31, 49-53, 57-58).)  Plaintiff had been counseled by her supervisors in the past for incidents of unprofessional conduct.  (*See* Def. Rule 56.1 Stmt., Ex. D. (Pl. Dep. at 49-53).)

In connection with plaintiff and Thorton's meeting on September 12, 2002, plaintiff also testified that Thorton inappropriately commented about her disability.  At the meeting, Thorton apparently suggested that her anger management problems may be attributable to her medical condition.  (*See* Def. Rule 56.1 Stmt., Ex. D. (Pl. Dep. at 28-29).)  However, it appears that Thorton was referring to the stress caused by her disability and not the disability itself.  In any event, plaintiff does not argue in her Memorandum of Law that this evidences disability discrimination prohibited by the NYSHRL, and we can discern no reason to conclude that it does.

[10]  As noted, in February 2003, plaintiff was receiving hemodialysis which could only be administered at a dialysis center.  (*See* Pl. Aff. ¶ 8, Ex. E; Complt. ¶ 42.)  *See supra* n.3.

Barrella ¶ 17; Pl. Rule 56.1 Stmt. ¶ 28; Pl. Aff., Ex. E; Def. Rule 56.1 Stmt., Ex. N.)  Defendant

granted plaintiff the accommodation and plaintiff worked throughout February and the first half of

March.  (*See* Barrella ¶ 17; Def. Rule 56.1 Stmt. ¶ 28; Pl. Rule 56.1 Stmt. ¶ 28.)

On March 18, 2003, plaintiff requested leave for three months and submitted a letter stating:

> I . . . would like to request an immediate medical leave of absence effective 3/18/03.
> Due to circumstances out of my control, I am requesting a 2-3 month leave pending
> status.  During my absence, I will keep my commitment to attend all prearranged
> classes scheduled at White Plains High School.  I understand that failure on my part
> to attend these classes will result in termination of my employment.

(*See* Pl. Aff., Ex. F; Def. Rule 56.1 Stmt., Ex. O; Barrella Aff. ¶ 18.)  She also submitted a letter

from Pisano stating:

> Ms. Roberts is under my care and the care of multiple other physicians for multiple
> medical conditions.  It is strongly recommended at this time she commence with a
> leave of absence as of today.  I anticipate this leave to last 3 months at which time
> she will be reevaluated for return to employment.

(*See* Def. Rule 56.1 Stmt., Ex. P; Barrella Aff. ¶ 19.)  In response, defendant sent plaintiff a letter

on March 19, 2003, stating:

> This letter serves to confirm our meeting yesterday.  At your request I am relieving
> you of your responsibilities as an operations manager effective 3/18/03.  I have
> authorized an extension of your medical coverage through June 18, 2003.  Your share
> of the cost was deducted from your paycheck.  After June 18, 2003 you will be
> required to go on "COBRA" to maintain medical insurance.  Therefore when you
> have a doctor's clearance to return, please contact me for employment consideration.

(*See* Def. Rule 56.1 Stmt., Ex. S.)

Defendant did not consider plaintiff's leave from March 18, 2003 to June 18, 2003 as FMLA

leave and believed that plaintiff was not eligible or entitled to such leave at that time.  (*See* Barrella

Aff. ¶ 21; Def. Rule 56.1 Stmt. ¶ 32.)  Barrella determined that plaintiff had not worked the required

amount of hours in the preceding twelve months to be eligible for FMLA leave and had already

exhausted all of her FMLA leave for that period.  (*See* Barrella Aff. ¶¶ 20-22.)  Unlike the October 3, 2002 letter, this letter did not enclose a FMLA notice and indicated that plaintiff would have to purchase COBRA coverage after June 18, 2003 in order to maintain medical insurance.  (*See* Barrella Aff. ¶ 21; Def. Rule 56.1 Stmt., Ex. S.)

In April 2003, one of the three Operations Managers resigned, leaving only two managers to perform the responsibilities that typically required four people.  (*See* Barrella Aff. ¶ 23; Def. Rule 56.1 Stmt. ¶ 33.)  As a result, defendant promoted two individuals to the position of Operations Manager to fill the vacancies.  (*See id.*)

In plaintiff's affidavit, she claims that on April 22, 2003, she informed Barrella that she was ready to return to work and he indicated that they "'need[ed] to talk'" and "there were 'other things [she] needed to do before [she] returned . . . .'"  (*See* Pl. Aff. ¶ 9.)  Plaintiff alleges that she requested a meeting to discuss her employment situation and Barrella said that he first had to talk with GHI's individual owners.  (*See id.*)  Plaintiff claims that Barrella never contacted her, and she called him on two occasions thereafter to follow up.[11]  (*See id.* ¶¶ 10-11.)

According to plaintiff, Barrella requested that she submit documentation from her treating physician providing her medical clearance to return to work.  (*See* Pl. Aff. ¶ 11.)  She claims that Pisano sent defendant a letter, dated April 25, 2003, indicating that she was able to work part-time as of April 28, 2003.  (*See* Pl. Aff. ¶ 12; Urena Decl., Ex. F.)  Although it appears that Pisano wrote such a letter, (*see* Urena Decl., Ex. F; Def. Rule 56.1 Stmt., Ex. G (Pisano Dep. at 30, 38)), there is

---

[11] During plaintiff's deposition, however, she merely claimed to have contacted Barrella to request to return to work at some point prior to June 30, 2003 and could not recall the specific date or month, nor could she recall any of the details alleged in her affidavit.  (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 106-29, 130-31, 136).)

no evidence that it was ever sent to defendant, except for plaintiff's unsubstantiated allegation that

she called Barrella's office and was told that the office had received it. (*See id.*; Pl. Aff. ¶ 12.)

Plaintiff, however, could not identify the person with whom she spoke, and neither plaintiff nor

Pisano has personal knowledge that it was ever sent to defendant.[12] (*See id.*) The letter itself is

unaddressed. (*See* Urena Decl., Ex. F.)

According to Barrella, on April 22, 2003, plaintiff called him and updated him on her health

status and indicated that she might be able to return to work in a month. (*See* Def. Rule 56.1 Stmt.

¶ 34; Doherty Aff'm, Ex. Z (Barrella Dep. at 44); Barrella Aff. ¶ 24.) He claims that he informed

her that she would need to provide medical documentation clearing her to work. (*See* Def. Rule 56.1

Stmt. ¶ 34; Doherty Aff'm, Ex. Z (Barrella Dep. at 44).) According to Barrella, plaintiff never

provided him with any medical documentation and did not indicate that she would be able to return

to work at any specific time.[13] (*See* Barrella Aff. ¶ 24; Doherty Aff'm, Ex. Z (Barrella Dep. at 47).)

Barrella claims that plaintiff did not contact him again until June 30, 2003, approximately two weeks

after her medical leave to June 18, 2003 had expired.[14] (*See* Barrella Aff. ¶¶ 25-26; Doherty Aff'm,

---

[12] In the Complaint, plaintiff alleges that she personally sent Pisano's letter to Barrella, an allegation which she subsequently recanted in her deposition and in her affidavit. (*See* Complt. ¶ 52; Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 106-39); Pl. Aff. ¶ 12.)

[13] Defendant submitted a memorandum written by Barrella memorializing the phone conversation between plaintiff and Barrella on April 22, 2003. (*See* Def. Rule 56.1 Stmt., Ex. U.) It indicated that plaintiff informed Barrella that "she was feeling better and might be able to return to work in a month." (*See id.*) It also stated that Barrella informed plaintiff that GHI had permanently promoted a new Operations Manager. (*See id.*) According to the memorandum, he then advised plaintiff that, upon her medical clearance, GHI would consider her for any open positions at that time. (*See id.*)

[14] According to plaintiff, she made two attempts to meet with Barrella and the owners of GHI in June 2003, but was unsuccessful. (*See* Pl. Aff. ¶ 13.) However, plaintiff testified that she met with one of the individual owners in July 2003. (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 142).)

Ex. Z (Barrella Dep. at 38, 48-49).)

On June 30, 2003, plaintiff informed Barrella that she had become extremely ill again and required an indefinite period of medical leave.  (*See* Pl. Aff. ¶ 14, Ex. G.)  Barrella instructed plaintiff to put the request in writing and, on July 1, 2003, Barrella sent plaintiff a letter stating:

> Enclosed please find the COBRA forms you requested.  If you choose to use COBRA please complete the enclosed forms and return to Christa within the stated deadline.  As you are aware the Company has made every effort to work with you during this difficult time.  However, understanding your present condition we realize your health is your number one priority.  Therefore, we wish you well in your continued efforts to regain your health.
>
> If there is anything else that we can do for you please do not hesitate to ask.

(*See* Def. Rule 56.1 Stmt., Ex. V; Barrella Aff. ¶ 26.)  In response, on July 7, 2003, plaintiff sent Barrella a letter stating:

> Per our conversation on Monday[,] June 30, 2003, I am requesting an extended medical leave of absence.  Unfortunately, this is due to failure to get medical clearance from my physicians.
>
> Your enclosed letter dated July 1, 2003 and Cobra documents were received on Saturday July 5, 2003.  This brings an enormous concern since the Cobra documents reflect an expiration date of June 30, 2003 of all medical benefits.  The document entitled Notice of Rights to Continue Group Medical and/or Dental Insurance indicates no further notice will be sent and failure to make payments due will terminate insurance benefits.
>
> Therefore, please contact me as soon as possible in hopes to resolve this matter.  And as always I appreciate your assistance.

(*See* Pl. Aff., Ex. G;  Barrella Aff. ¶ 27.)

Thereafter, plaintiff called Barrella to schedule a meeting to discuss her employment status.

(*See* Barrella Aff. ¶ 28.)  On July 31, 2003, Barrella met with plaintiff, who was accompanied by Franklin Brown, the pastor of her church.  (*See* Barrella Aff. ¶ 29; Urena Decl., Ex. U (Brown Dep.

at 26, 29), Ex. P (Barrella Dep. at 50).)  At this time, plaintiff did not know when she could return to work, and Barrella informed her that GHI had to terminate her employment.  (*See* Barrella Aff. ¶ 29; Urena Decl., Ex. P (Barrella Dep. at 50-51), Ex. U (Brown Dep. at 31).)  At plaintiff's request, Barrella provided plaintiff with her attendance records and sent her a letter, dated August 13, 2003, regarding her employment status.  (*See* Barrella Aff. ¶¶ 29-30; Urena Decl., Ex. P (Barrella Dep. at 51-52.)  It stated:

> This letter is to clarify any misunderstanding that may exist concerning your employment status.
>
> Our records indicate your last day worked was March 18, 2003.  Your last day of employment was June 18, 2003 at the conclusion of your unpaid medical leave.

(*See* Pl. Aff., Ex. H.)  Subsequent to plaintiff's request for leave in June, plaintiff never provided defendant with medical authorization indicating that she was able to resume working, and it is not clear when, if ever, plaintiff eventually received medical clearance to work.  (*See* Def. Rule 56.1 Stmt. ¶ 41, Ex. E (Pl. Dep. at 217-18); Pl. Rule 56.1 Stmt. ¶ 41.)  After plaintiff was discharged, plaintiff received public assistance and did not work until June 2004.  (*See* Def. Rule 56.1 Stmt., Ex. E (Pl. Dep. 217, 219-20).)  Plaintiff brought this action on June 22, 2004, and the parties have since concluded discovery.  We now turn to defendant's motion for summary judgment.


## DISCUSSION

### I.   <u>Legal Standard</u>

Under FED. R. CIV. P. 56, a motion for summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

11

is entitled to a judgment as a matter of law." It is axiomatic that "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The Court's role is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). In doing so, the Court must resolve all ambiguities and draw all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255. At all times, the burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"'Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor.'" *Hill v. Rayboy-Brauestein*, No. 02-CV-3770, 2006 WL 3298383, at *5 (S.D.N.Y. Nov. 9, 2006) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)). The nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 405 (S.D.N.Y. 2006) ("In making its showing that a genuine issue of material fact exists, the nonmoving party may not rely on 'the mere existence of a scintilla of evidence' to support its position, but must instead proffer 'evidence on which the jury could reasonably find for the [plaintiff].'" (quoting *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004)). "However, summary judgment should only be granted '[i]f *after discovery*, the nonmoving party "has failed to make a sufficient showing on an

12

essential element of [its] case with respect to which [it] has the burden of proof."'" *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (quoting *Celotex Corp.*, 477 U.S. at 323 (1986) (emphasis in original; alterations in original).

## II.     Interference with Plaintiff's Rights Guaranteed Under the FMLA

Plaintiff alleges that defendant interfered with her rights guaranteed under the FMLA.[15] Specifically, plaintiff alleges that, on April 25, 2003, she informed Barrella that she could return to work and provided him with the required medical documentation.  Nonetheless, defendant failed to reinstate plaintiff to her former position or to an equivalent position.  In addition, plaintiff claims that she was terminated in June 2003 prior to the exhaustion of her FMLA leave.  Defendant maintains that plaintiff was not eligible for FMLA leave as of March 18, 2003 and therefore was not entitled to reinstatement on April 28, 2003 or any time thereafter.

The FMLA provides eligible employees the right to take up to twelve work weeks per year of unpaid leave due to a serious health condition that prevents the employee from performing her work function.  *See* 29 U.S.C. § 2612(a)(1).  At the conclusion of the leave, the employee has the right to return to the position that she held before taking leave, or to an equivalent position.  *See id.* § 2614(a).  However, the employee has no right to be restored to her prior position if the employee is unable to perform an essential job function because of a physical or mental impairment.  *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999).

---

[15] A plaintiff may raise separate causes of action pursuant to the FMLA for "interference" and "retaliation." *See Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004).

The FMLA prohibits an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute.  29 U.S.C. § 2615(a)(1).  To this end, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (citing *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003)).  In order to establish a *prima facie* case for interference under the FMLA, a plaintiff must establish:  "'(1) that she is an "eligible employee" under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA.'"  *Kennebrew v. N.Y. City Hous. Auth.*, No. 01 CIV. 1654, 2002 WL 265120, at *19 (S.D.N.Y. Feb. 26, 2002) (quoting *Santos v. Knitgoods Workers' Union*, No. 99 Civ. 1499, 1999 WL 397500, at *3 (S.D.N.Y. June 15, 1999)); *see also Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004); *Sabatino v. Flik Int'l Corp.*, 286 F. Supp. 2d 327, 335-36 (S.D.N.Y. 2003) (Conner, J.).

Defendant first argues that plaintiff was not an eligible employee as of March 18, 2003.  "The term 'eligible employee' means an employee who has been employed . . . for at least 12 months by the employer . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611.  "The determining factor is the number of hours an employee has worked for the employer within the meaning of the [Fair Labor Standards Act 'FLSA')]."  29 C.F.R. § 825.110(c).  Pursuant to the regulations of the FLSA, "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively

14

for his own purposes are not hours worked." 29 C.F.R. § 785.16(a). "The determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months . . . must be made as of the date leave commences." 29 C.F.R. § 825.110(d). "An employer must be able to clearly demonstrate that . . . an employee did not work 1,250 hours during the previous 12 months in order to claim that the employee is not 'eligible' for FMLA leave." 29 C.F.R. § 825.110(c).

Defendant argues that plaintiff took leave commencing on March 18, 2003 but only worked 1,210.6 hours from March 19, 2002 to March 18, 2003 and consequently was not eligible for FMLA leave as of March 18, 2003. (*See* Barrella Aff. ¶ 22; Def. Rule 56.1 Stmt., Ex. T.) It contends that because plaintiff's leave from March 18, 2003 to June 18, 2003 was merely an accommodation and not granted pursuant to the FMLA, it had no obligation to reinstate plaintiff in April or any time thereafter. In response, plaintiff argues that the periods during which she was absent from October 1, 2002 to January 6, 2003 and from March 18, 2003 to June 18, 2003 constitute intermittent leave and are not separate leaves pursuant to the FMLA. She contends that, as a result, she was only required to establish eligibility under the FMLA prior to the commencement of the first absence, which was October 1, 2002, and not prior to each absence, *e.g.*, March 18, 2003. Thus, under plaintiff's theory, the determining factor is the amount of hours she worked from October 1, 2001 to September 30, 2002, the twelve-month period immediately preceding the first absence of the intermittent leave. Under defendant's theory, the determining factor is the amount of hours plaintiff worked from March 18, 2002 to March 17, 2003, the twelve-month period immediately preceding plaintiff's second medical leave. Both defendant and plaintiff miss the mark.

First, we must determine whether plaintiff's absences commencing on October 1, 2002 and March 18, 2003 constitute intermittent leave. "Intermittent leave is FMLA leave taken in separate

blocks of time due to a single qualifying reason." 29 C.F.R. § 825.203(a).  "Intermittent leave may

be taken for a serious health condition which requires treatment by a health care provider

periodically, rather than for one continuous period of time, and may include leave of periods from

an hour or more to several weeks."  29 C.F.R. § 825.203(c)(1). "Examples of intermittent leave

would include leave taken on an occasional basis for medical appointments, or leave taken several

days at a time spread over a period of six months, such as for chemotherapy."  *Id.*  In addition,

"[l]eave may be taken intermittently . . . when medically necessary for . . . unanticipated medical

treatment of a related serious health condition by or under the supervision of a health care provider,

or for recovery from treatment or recovery from a serious health condition." 29 C.F.R. § 825.203(c).

> Plaintiff argues that:

> Defendant placed [p]laintiff on FMLA leave beginning on October 1, 2002, due to
> [p]laintiff's serious health condition, the gastrointestinal bleed and peritonitis which
> required [p]laintiff's hospitalization for forty-five (45) days. . . . On March 18, 2003,
> [p]laintiff requested medical leave again due to the same serious health condition
> which necessitated her leave in October 2002. . . . Thus the leave [p]laintiff took in
> October 2002[] was "intermittent FMLA leave."

(*See* Pl. Mem. Opp. Summ. J. at 8-9.)  Although the precise reasons for plaintiff's absences

commencing in October 2002 and March 2003 are somewhat unclear, the record, construed in the

light most favorable to plaintiff, reveals the following facts.  In October 2002, plaintiff was

diagnosed with peritonitis, a common complication caused by the continuous ambulatory peritoneal

dialysis that she had underwent from 1987 through 2002, and was hospitalized as a result thereof.

(*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 43), Ex. F (Saitta Dep. 17), Ex. G (Pisano Dep. at 16-

18).)  Then, on March 18, 2003, plaintiff's peritonitis and gastrointestinal problems resurfaced and

caused plaintiff severe pain, rendering plaintiff incapable of working and necessitating further

16

medical leave.  (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 99-100), Ex. F (Saitta Dep. 17), Ex. G (Pisano Dep. at 17-18).)  Thus, because plaintiff's two periods of absences were both attributable to the peritonitis, a direct side effect of her ambulatory peritoneal dialysis, plaintiff's absences commencing on October 1, 2002 and March 18, 2003 must be considered part of a single, intermittent leave.

Next, we must determine whether plaintiff was eligible for FMLA leave as of March 18, 2003 in light of the fact that she took intermittent leave commencing on October 1, 2002.  Although very little authority exists regarding the computation of hours worked for purposes of determining employee eligibility under the FMLA in the context of intermittent leave, the Department of Labor ("DOL") and two district courts have addressed this exact issue.[16]  All three explained that "the 1,250-hour eligibility test is applied only once, on the commencement of a series of intermittent absences, if all involve the same FMLA-qualifying serious health condition *during the same 12-month FMLA leave year*."   DOL Opinion Letter, 2000 WL 33157366 (Sept. 11, 2000) (emphasis added); *see also Sills v. Bendix Commercial Vehicle Sys.*, No. Civ. 1:04-CV-149, 2005 WL 2674926, at *8 (N.D. Ind. Oct. 20, 2005); *Barron v. Runyon*, 11 F. Supp. 2d 676, 683 (E.D. Va. 1998).

---

[16]  The DOL, which is responsible for promulgating regulations and providing guidance on the FMLA, issued an Opinion Letter regarding the manner in which to determine an employee's eligibility for leave taken intermittently or on a rounded leave schedule due to a qualifying serious health condition.  Such opinion letters are normally accorded great deference.  *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 47 & n.1 (2d Cir. 2002) ("Even though not formally promulgated as regulations, these opinion letters, as the views of the agency charged with implementing [the statute at issue], are at least '"a body of experience and informed judgment to which courts and litigants may properly resort for guidance[.]"'") (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638 (5th Cir. 2001) ("Interpretive and opinion letters by the Department of Labor do not *per se* bind the court. Such materials, however, do 'constitute a body of experienced and informed judgment' and the court will give these materials 'substantial weight.'") (citation omitted).

However, "[a]ny eligibility determination made on the date leave commences, then, can apply only to the twelve weeks the employee plans to take within the current twelve-month period . . . ." *Barron*, 11 F. Supp. 2d at 683; *see also* DOL Opinion Letter, 2000 WL 33157366; *Sills*, 2005 WL 2674926, at *8 ("an employee [must] meet the eligibility requirements annually, even in a case of intermittent leave taken for an ongoing medical condition."). Thus, after the twelve-month period expires, the employee must reestablish eligibility in order to take FMLA leave during the subsequent twelve-month period. *See* DOL Opinion Letter, 2000 WL 33157366 ("If the employee needed leave . . . again in a new 12-month period, the employee would have to re-qualify under the 1,250-hour eligibility test to be entitled to take FMLA leave for the same chronic condition in the new 12-month period."); DOL Opinion Letter, 2005 WL 3401779 (Sept. 14, 2005) ("[I]f the employee used leave in a new FMLA leave year, the employer could reassess the employee's eligibility for FMLA leave at that time."). As the DOL and the court in *Sills* explained:

> Assume an employee is diagnosed with an FMLA-qualifying chronic condition, such as [Multiple Sclerosis (MS)] . . ., that results in an employee needing intermittent leave due to the episodic nature of the condition. For example, if an employee with MS who was eligible to take intermittent FMLA leave in April and May needed leave again when the episodes of incapacity recurred in July and again in October, the employee would be entitled to FMLA leave without having to re-qualify under the 1,250-hour eligibility test so long as the absences occurred within the same 12-month period and the employee had not exhausted the 12-week leave entitlement for this or any other FMLA-qualifying reason. If the employee needed leave for MS again in a new 12-month period, the employee would have to re-qualify under the 1,250-hour eligibility test to be entitled to take FMLA leave for the same chronic condition in the new 12-month period.

*Sills*, 2005 WL 2674926, *9 (citing DOL Opinion Letter, 2000 WL 33157366).

In order to ascertain the twelve-month period after which an employee must reestablish eligibility, three different computation methods may be employed, namely: (1) the calendar method;

(2) the fixed period; (3) the "12-month period measured forward" method; and (4) the "rolling

backward" method.  *See* DOL Opinion Letter, 2000 WL 33157366.  As the Department of Labor has

explained:

> Where an employer has selected either the calendar year, fixed year, or the 12-month
> period measured forward, . . . an employee's eligibility, once satisfied, for
> intermittent FMLA leave for a particular condition would last through the entire
> current 12-month period as designated by the employer for FMLA purposes.  If an
> employer uses the rolling backward method, an employee's eligibility for absence
> due to a particular condition would continue for 12 months from the date of the first
> FMLA absence for the condition.  Under all of these methods, eligibility could be re-
> calculated at the time of the first absence for the condition after the conclusion of the
> 12-month period.

*See id.*; *see also* 29 C.F.R. § 825.200(b).  However, when an employer has not designated a

particular computation method, "the option that provides the most beneficial outcome for the

employee will be used."  29 C.F.R. § 825.200(e).

In the present case, defendant did not establish any particular method and we must apply the

method that produces the best result for plaintiff.  Both the application of the calendar method and

the "12-month period measured forward" or the "rolling backward" methods would allow plaintiff

to establish eligibility as of March 18, 2003.  First, under the calendar method, because plaintiff

commenced her intermittent leave on October 1, 2002, she would be required to reestablish her

eligibility upon her first absence after the conclusion of the initial twelve-month period, *i.e.*, the

calendar year, which  is January 1, 2003.  At that time, plaintiff could have re-established eligibility

for the year 2003, as she worked approximately 1,530 hours in 2002.  (*See* Def. Rule 56.1 Stmt., Ex.

T (2002, Week 52).)  Second, applying either the "12-month period measured forward" or the

"rolling back" method,  plaintiff would be required to reestablish her eligibility upon taking FMLA

leave after the conclusion of the twelve-month period, *i.e.*, after September 30, 2003.  Because

plaintiff did not take FMLA leave after September 30, 2003, she would not be required to reestablish her eligibility after being deemed an eligible employee as of October 1, 2002. Accordingly, applying any of the three methods (calendar method, "12-month period measured forward" or "rolling backward"), plaintiff was an eligible employee pursuant to the FMLA as of March 18, 2003.

The next issue is whether plaintiff was *entitled* to FMLA leave on March 18, 2003. "[A]n eligible employee's FMLA leave entitlement is limited to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform one or more of the essential functions of his or her job." 29 C.F.R. § 825.200; 29 U.S.C. § 2612. In determining the "12-month period" in which the twelve weeks of leave entitlement occurs, an employer is permitted to choose: (1) the calendar year; (2) any fixed twelve-month "leave year"; (3) the "12-month period measured forward" from the date any employee's first FMLA leave begins; or (4) a "rolling 12-month period measured backward" from the date an employee uses any FMLA leave. *See* 29 C.F.R. § 825.200(b). As in the eligibility context, "[i]f an employer fails to select one of the[se] options . . . for measuring the 12-month period, the option that provides the most beneficial outcome for the employee will be used." *Id.* at § 825.200(e).

Defendant argues:

> Plaintiff took no less than fifteen weeks of medical leave from September 24, 2002, through January 6, 2003, (the earliest point at which she provided authorization to return). Her leave from October 1, 2002 forward was designated as FMLA leave, which would have expired on or about December 24, 2002, and definitely prior to the end of 2002. As a result, as of March 18, 2003, [p]laintiff no longer was entitled to any FMLA leave and any refusal of GHI to reinstate her from March 18, 2003 forward, if any, therefore, cannot violate the FMLA.

(*See* Def. Mem. Supp. Summ. J. at 9.) In its argument, defendant clearly uses the "rolling" twelve-month period measured backward from the date an employee uses any FMLA leave, which, under

20

the present circumstances, is the most detrimental to plaintiff.  Because defendant failed to notify plaintiff (or any other employee) of its use of the "rolling" computation method, defendant's argument fails, and we must apply the method that is most beneficial to plaintiff.

In the present case, it is clear that the calendar method is the most beneficial.[17]  Applying the calendar method, plaintiff was entitled to twelve weeks of FMLA leave as of January 1, 2003. Plaintiff took leave from January 1, 2003 to January 6, 2003 and then took leave commencing in March 18, 2003 to April 28, 2003 at which time plaintiff claims that she requested to return to work. (*See* Def. Rule. 56.1 Stmt., Exs. Q, R.)  As of April 28, 2003, plaintiff took approximately six weeks of leave in 2003 and therefore was entitled to take approximately six additional weeks of FMLA leave during the remainder of the calendar year.  Accordingly, in the event that plaintiff were to show that she properly sought reinstatement on April 28, 2003, she could establish a claim for FMLA interference, as it is clear that she was not reinstated to her position or to an equivalent one at that time.

The parties dispute whether plaintiff, in fact, attempted to return to work on April 28, 2003. Plaintiff alleges in her affidavit that, in April 2003, she informed Barrella that she was able to return to work and that she called Barrella on three occasions to schedule a meeting with him regarding her return.  (*See* Pl. Aff. ¶¶ 9-11.)  In addition, she alleges that Pisano sent Barrella's office a letter, dated April 25, 2003, indicating that plaintiff was medically cleared to work part-time as of April

_____

[17] In determining the twelve-month period, we may only choose from the calendar method or the "12-month period measured forward" or "rolling backward" methods because it is only their application that allows plaintiff to establish eligibility as of March 18, 2003.  In addition, we believe that the same method must be applied in both the eligibility and entitlement contexts, and a plaintiff cannot apply a different method to determine eligibility than in determining entitlement in an effort to secure the best result for herself.

28, 2003.  (*See id.* ¶ 12.)  Plaintiff produced a letter signed by Pisano's assistant, dated April 25, 2003, indicating exactly that, but it is unaddressed and does not otherwise indicate that it was actually sent to defendant.  (*See* Urena Decl., Ex. F.)  However, plaintiff alleges that she called "Barrella's office and was advised [that] they [had] received [] Pisano's note and would provide it to Barrella."  (*See* Pl. Aff. ¶ 12.)

Conversely, defendant claims that plaintiff called Barrella on April 22, 2003 and merely indicated that "she may be able to return to work in about a month."  (*See* Barrella Aff. ¶ 24.) Barrella claims that he never received correspondence from plaintiff's physician and did not hear from plaintiff again until June 30, 2003.  (*See id.* ¶¶ 24, 26.)  Moreover, at plaintiff's deposition, she was not able to recall when she contacted defendant prior to June 2003 to indicate that she could return to work, and she offers no explanation for the sudden recollection of specific dates alleged in her affidavit.  (*See* Def. Rule 56.1 Stmt., Ex. D (Pl. Dep. at 106-29,130-31, 136).)  Furthermore, plaintiff received New York State disability benefits from March 19, 2003 to June 16, 2003, which arguably suggests that plaintiff was not sufficiently well to return to work in April.  (*See* Def. Rule 56.1 Stmt. ¶ 35; Pl. Rule 56.1 Stmt. ¶ 35; Barrella Aff. ¶ 31.)  Nevertheless, because plaintiff's allegations must be presumed true and they are in part substantiated by the letter signed by Pisano's assistant dated April 25, 2003, a genuine issue of material fact exists and summary judgment must be denied.  *See Kessler*, 461 F.3d at 206 ("'[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'") (quoting *Anderson*, 477 U.S. at 249).

Plaintiff also claims that defendant violated the FMLA by terminating her employment on June 18, 2003 because she was entitled to additional FMLA leave at that time.  Defendant contends

that, by June 18, 2003, plaintiff had taken more than twelve weeks of leave during the same twelve-month period and had thus exhausted her leave under the FMLA.  However, in light of plaintiff's allegation that she requested to return to work on April 28, 2003, we cannot conclude that plaintiff's leave would have been exhausted by June 18, 2003.[18]

III.   <u>NYSHRL- Disability Discrimination</u>

Plaintiff also asserts a claim under the NYSHRL for disability discrimination.  Specifically, she alleges that defendant discriminated against her on the basis of her disability by: (1) not reinstating her in April 2003; (2) terminating her employment on June 18, 2003; and (3) denying her request for an indefinite period of leave on June 30, 2003.  "In discrimination claims brought under the New York State . . . Human Rights Law, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies."  *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99-100 (2d Cir. 2006) (citing *N. Shore Univ. Hosp. v. Rosa*, 86 N.Y.2d 413, 633 N.Y.S.2d 462, 657 N.E.2d 483, 485 (1995)). "That framework requires a plaintiff in a disability-discrimination case to establish a *prima facie* case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action in question." *Id.* at 100.  "Once the defendant provides such a reason, the plaintiff shoulders the burden of showing 'sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext' for

---

[18] For example, if plaintiff had requested reinstatement on April 28, 2003 and then required medical leave commencing on May 1, 2003 until June, she would have exhausted her FMLA leave by June 18, 2003.  (*See* Def. Rule 56.1 Stmt., Ex. R.)  However, if, hypothetically, plaintiff had requested reinstatement on April 28, 2003 but did not require medical leave until June 1, 2003, she still could have been eligible for FMLA leave as of June 18, 2003.

discrimination." *Id.* (quoting *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999)).

The elements of a *prima facie* case for discrimination prohibited by the NYSHRL are the same for a claim under the Americans with Disabilities Act ("ADA"). *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 . . . is governed by the same legal standards as govern federal ADA claims.") (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000). Specifically, plaintiff must show that: (1) her employer was subject to the NYSHRL; (2) she was disabled within the meaning of the NYSHRL;[19] (3) she was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability. *See Sista*, 445 F.3d at 169 (citing *Giordano*, 274 F.3d at 747); *Micari v. Trans World Airlines, Inc.*, 205 F.3d 1323, 1323 (2d Cir. 1999); *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999). The parties do not dispute that defendant is subject to the NYSHRL or that plaintiff is disabled for purposes of the statute. Defendant argues, however, that plaintiff could not have performed the essential duties of her position, with or without a reasonable accommodation, in either April or June of 2003.

Plaintiff alleges that, in April 2003, she informed defendant that she was able to return to work. She further alleges that Pisano sent Barrella's office the proper medical clearance, but, nevertheless, she was not reinstated and remained on unpaid medical leave. Defendant, in its defense, primarily argues that plaintiff never attempted to return to work in April, but rather,

---

[19] The definition of disability under the NYSHRL is broader than the ADA's corresponding definition. *See Sista*, 445 F.3d at 169 n.2 (citing *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

informed Barrella on April 22, 2005 that she might be able to return to work in a month. Accordingly, as explained *supra* pp. 21-22, a genuine issue of material fact exists as to whether plaintiff, in April 2003, requested to return to work and was medically cleared to do so.

Defendant argues, however, that even if plaintiff did, in fact, properly request reinstatement in April 2003, she only could have worked part-time. Defendant relies on the letter that was purportedly sent to defendant by Pisano which states: "The above patient may now return to *part time work* as of April 28, 2003 from the medical leave of absence commenced March 18, 2003." (*See* Urena Decl., Ex. F. (emphasis supplied).) No evidence in the record, however, suggests that defendant failed to reinstate plaintiff because she requested to return to a part-time position. This is merely counsel's *ex post facto* argument to obviate defendant's obligation to reinstate plaintiff. Indeed, defendant unequivocally claims that plaintiff did not request to return to work *at all* in April and that it never received Pisano's letter prior to this litigation. Although defendant may not have an obligation to reinstate plaintiff to a part-time position under certain circumstances,[20] it is unclear whether plaintiff made such a request. Indeed, plaintiff alleges that she requested to be restored to the position that she had prior to her leave, and any inconsistent indication in Pisano's letter may merely be reflective of plaintiff's usual four-day-a-week work schedule. (*See* Def. Rule 56.1 Stmt., Exs. Q, R.) According to plaintiff, defendant made no effort to ascertain the nature of plaintiff's request to return to work and, in fact, ignored her request almost completely. *See* N.Y. COMP. CODES R. & REGS., tit. 9, § 466.11(j), (k) (2007) ("The employer has a duty to move forward to consider

---

[20] *See Parker*, 204 F.3d at 336 n.5 ("Although part-time work constitutes a reasonable accommodation under the ADA, *see* 42 U.S.C. § 12111(9)(B), an employee who proposes this accommodation may only prevail in an ADA action if he can demonstrate that he could perform the essential functions of his job while working part-time.").

accommodation once the need for accommodation is known or requested.  The employer has the duty to clearly request from the applicant or employee any documentation that is needed."); *cf. Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 568 (2d Cir. 2000) (noting that the ADA imposes an obligation upon an employer to take affirmative steps to assist an employee in identifying potential accommodations); *Mengine v. Runyon*, 114 F.3d 415, 419 (3d Cir. 1997) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.").  It remains consequential whether plaintiff requested reinstatement in April 2003, and Pisano's written clearance for only "part time work" does not render this disputed issue of fact immaterial.  Accordingly, defendant's motion for summary judgment with respect to plaintiff's claim for disability discrimination under the NYSHRL is denied.

However, with respect to defendant's termination of plaintiff's employment on June 18, 2003, plaintiff has offered no evidence that she could have performed the essential duties of her position as of that date.  Certainly, the record is clear that she did not provide any such indication to defendant.  Indeed, shortly thereafter, plaintiff informed defendant that she could not obtain medical clearance to return to work and requested an indefinite leave of absence.  It is equally clear that defendant terminated plaintiff because her disability rendered her incapable of working at all, and the record is devoid of any discriminatory motivation for its decision.

Similarly, we reject plaintiff's claim that defendant failed to provide her reasonable accommodation, as required by the NYSHRL, by denying her request for medical leave on June 30,

2003.  N.Y. Exec. Law § 296(3)(a) prohibits an employer from "refus[ing] to provide reasonable accommodations to the known disabilities of an employee . . . in connection with a job or occupation sought . . . ."  Just as with her claim for discriminatory discharge, to succeed on her NYSHRL accommodation claim, plaintiff must demonstrate that she could have performed the essential duties of her position with reasonable accommodation.  *See Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 103 (2d Cir. 2003) ("We have already held that § 292(21) of the NYSHRL is parallel to the 'otherwise qualified' requirement of the ADA.") (citing *DiSanto v. McGraw-Hill, Inc./Platt's Div.*, 220 F.3d 61, 64 (2d Cir. 2000); *Parker*, 204 F.3d at 332 n.1); *see also Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004); N.Y. Exec. Law § 292(21).

In the present case, plaintiff was unable to work at all and consequently requested medical leave for an indefinite period of time.  The law is clear that such an accommodation request is not reasonable.  *See Parker*, 204 F.3d at 338 ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him based on his inability to work."); *Scott v. Mem'l Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 597 (S.D.N.Y. 2002) ("Thus, plaintiff is either asking for an extended paid leave of absence or asking the hospital to hold her job open indefinitely. The ADA clearly does not require employers to hold positions open indefinitely as an accommodation to disabled employees."); *Raisley v. First Manhattan Co.*, 4 Misc. 3d 1022(A), *3, 798 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004) ("[D]efendant['s] . . . obligation to provide a 'reasonable accommodation' does not create a requirement that an employer hold a position open indefinitely for an injured or temporarily disabled employee.").  Accordingly, defendant was not obligated by the

NYSHRL to allow plaintiff to take an indefinite period of medical leave.

In conclusion, we reject plaintiff's discrimination claims that defendant violated the NYSHRL by terminating her employment in June 2003 or by denying her request for an indefinite period of leave at that time. However, because we conclude that there is a genuine issue of material fact as to whether defendant's failure to reinstate her in April 2003 was discriminatory and in violation of the statute, defendant's motion for summary judgment with respect to plaintiff's single cause of action for disability discrimination under the NYSHRL is denied.

## IV.    **Plaintiff's Motion to Strike**

Plaintiff cross-moves the Court to strike certain portions of defendant's submissions in support of its motion for summary judgment. First, plaintiff requests that we strike paragraphs twenty and twenty-one of Barrella's affidavit because they contain legal conclusions. (*See* Pl. Mem. Supp. Mot. To Strike at 2.) The provisions at issue state that plaintiff was not entitled to leave pursuant to the FMLA on March 18, 2003. (*See* Barrella Aff. ¶¶ 20-21.) Because this is a legal conclusion, it must be stricken from the record.[21] *See, e.g.*, *Cornette v. McAllister Bros.*, No. 80 Civ. 4913, 1981 U.S. Dist. LEXIS 12938, at *1 (S.D.N.Y. May 19, 1981) (Conner, J.). Therefore, the Court has not considered these allegations in connection with defendant's motion for summary

---

[21] In paragraph twenty, Barrella also states that he reviewed plaintiff's attendance records to determine whether she was eligible for FMLA leave on March 18, 2003. (*See* Barrella Aff. ¶ 20.) In addition, in paragraph 21, Barrella states that GHI granted plaintiff a three-month leave from March 18, 2003 to June 18, 2003 and that he did not send plaintiff a "Compliance Guide to the Family and Medical Leave Act" in connection therewith. (*See* Barrella Aff. ¶ 21.) Plainly, these allegations are admissible. *See Gualandi v. Adams*, 385 F.3d 236, 241 (2d Cir. 2004) (finding that factual allegations of which the affiant had personal knowledge and which were separable from the inadmissible legal conclusions are admissible).

judgment.

Plaintiff also requests that portions of paragraphs three through eight of Barrella's affidavit be stricken from the record because they are not based upon his personal knowledge, as the allegations concern events that occurred prior to his employment with defendant. (*See* Pl. Mem. Supp. Mot. To Strike at 3.) In response, defendant argues that Barrella, in making these allegations, relied upon plaintiff's employment records, to which, as her supervisor, he has access. (*See* Doherty Aff'm Opp. Mot. To Strike, Ex. A (Barrella Aff. ¶ 2.) Plaintiff contends, however, that because Barrella fails to cite any document upon which he relied, the allegations lack foundation and should be stricken. (*See* Pl. Reply Mem. Supp. Mot. To Strike at 3.) It is axiomatic that affidavits submitted in support of or in opposition to a summary judgment motion must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e); *see also Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (citing *Sarno*, 183 F.3d at 160. Accordingly, Barrella's allegations contained in paragraphs three, four, five, six and seven of his affidavit, of which he does not have personal knowledge, are stricken. The allegations contained in paragraph eight, however, are proper, as they are based on Barrella's personal knowledge. In any event, we have not relied upon any of these allegations in our decision unless they were substantiated by plaintiff's admissions, which, ironically, most of them were.

Next, plaintiff requests that this Court strike portions of paragraph twelve and thirteen of Barrella's affidavit that are based upon his "information and belief." First, she refers to the last sentence in paragraph twelve which states, "To my knowledge, this is the only copy that GHI maintained." (*See* Barrella Aff. ¶ 12.) In this context, however, the use of "[t]o my knowledge"

29

appears to be merely a matter of phraseology and does not render the allegation improper. Nonetheless, we have not relied upon this allegation in our decision.  Second, plaintiff moves to strike the first sentence in paragraph thirteen of Barrella's affidavit which states, "Upon information and belief, Ms. Roberts submitted an application for short term disability benefits which was granted by the State of New York." (*See* Barrella Aff. ¶ 13.)  Plaintiff's request is baseless given that she admits the veracity of this allegation in her Rule 56.1 Statement.  (*See* Pl. Rule 56.1 Stmt. ¶ 19.) Moreover, sworn allegations may be upon information and belief provided that the affiant states the sources of such information and the grounds for such belief.  Here, Barrella makes clear that his belief was based on his review of plaintiff's application for New York State disability benefits, which was cited in, and attached to, his affidavit.  Accordingly, plaintiff's motion to strike paragraph twelve and thirteen (or any part thereof) of Barrella's affidavit is denied.

Lastly, plaintiff moves to strike Exhibits A, B, C, G and H submitted by defendant in support of its motion for summary judgment, namely:  (1) the Complaint that plaintiff filed in the instant action; (2) this Court's Opinion and Order dated March 11, 2005 dismissing plaintiff's third and fourth causes of action; (3) the October 2, 2002 letter sent by Barrella to plaintiff which plaintiff also submits in support of her opposition to defendant's motion for summary judgment; (4) the deposition transcript of Pisano (in the absence of which plaintiff's case would be dismissed); and (5) the deposition transcript of Brown (upon which plaintiff herself relies).  Plaintiff's motion in this regard is utterly frivolous.[22]  Notably, plaintiff's identification of these exhibits was not accidental, as defendant emphasized the absurdity of plaintiff's motion in its opposition and plaintiff's counsel

---

[22] Plaintiff's additional argument that the Complaint and this Court's Opinion and Order, dated March 11, 2005, should be stricken because they contain inadmissible hearsay statements, displays a misunderstanding of the applicable rules.  (*See* Pl. Mem. Supp. Mot. To Strike at 5.)

explicitly reasserted the same objections to these exhibits in her Reply Memorandum of Law.  (*See* Def. Mem. Opp. Mot. To Strike at 5; Pl. Reply Mem. Supp. Mot. To Strike at 4.)   At the same time, ironically, she conceded that "there is no real dispute as to the[ir] authenticity . . . ."  (*See* Pl. Reply Mem. Supp. Mot. To Strike at 4.)   For that reason among others, plaintiff's motion to strike defendant's Exhibits A, B, C, G and H is denied.  Consequently, plaintiff's motion to strike portions of paragraphs 6, 8, 10-11, 13, 16, 17 and 18 of Defendant's Rule 56.1 Statement that purportedly rely upon the aforementioned exhibits is also denied.

31

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by defendant Group Handling, Inc. is denied.  Plaintiff Tina Roberts's motion to strike certain portions of the affidavit of John Barrella is granted in part and denied in part in accordance with Part IV. of this Opinion and Order.  Plaintiff's motion to strike defendant's Exhibits A, B, C, G and H annexed to defendant's Rule 56.1 Statement and paragraphs 6, 8, 10-11, 13, 16, 17 and 18 of defendant's Rule 56.1 Statement is denied.

SO ORDERED.

Dated: White Plains, NY
       March 30, 2007

_____
Senior United States District Judge

32