```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                                        ECF CASE
TINA ROBERTS,                            :
                                                     04 Civ. 4955 (WCC)
                        Plaintiff,       :

         - against -                     :              OPINION
                                                       AND ORDER
GROUND HANDLING, INC.,                   :

                        Defendant.       :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

      ZABELL & ASSOCIATES, P.C.
      **Attorneys for Plaintiff**
      4875 Sunrise Highway, Suite 300
      Bohemia, New York  11716

SAUL D. ZABELL, ESQ.
    Of Counsel

      GREENWALD DOHERTY, LLP
      **Attorneys for Defendant**
      151 North Main Street
      P.O. Box 490
      New City, New York 10956

TODD J. KRAKOWER, ESQ.
    Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Sr. D.J.:**

Plaintiff Tina Roberts brought this action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, the New York State Human Rights Law, EXEC. LAW §§ 296, *et seq.* ("NYSHRL") and the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161, *et seq.* ("COBRA") against her former employer, defendant Group Handling, Inc. ("GHI"). Plaintiff alleged that defendant: (1) interfered with her rights guaranteed under the FMLA; (2) discriminated against her on the basis of her disability in violation of NYSHRL; (3) failed to provide her with continuing group health plan coverage in violation of COBRA; and (4) retaliated against her for exercising her rights guaranteed under the FMLA. Defendant moved to dismiss plaintiff's first, third and fourth claims pursuant to FED. R. CIV. P. 12(b)(6), and in an Opinion and Order dated March 11, 2005, we granted defendant's motion with respect to plaintiff's third and fourth causes of action. Defendant then moved for summary judgment on plaintiff's remaining two claims, namely: (1) the first cause of action for interference with plaintiff's rights guaranteed under the FMLA; and (2) the second cause of action for disability discrimination in violation of NYSHRL. In an Opinion and Order dated March 30, 2007, we denied defendant's motion for summary judgment, and a jury trial was scheduled for October 1, 2007. Defendant now moves to preclude plaintiff from introducing evidence at trial relating to whether plaintiff's medical condition was worsened by defendant's alleged discriminatory acts, rendering her unable to work after June 30, 2003. For the following reasons, defendant's motion is granted.

**BACKGROUND**

The facts of this case are set forth extensively in our previous Opinion and Order, familiarity

1

with which is presumed. *See Roberts v. Ground Handling, Inc.*, No. 04 CIV 4955, 2007 WL 2071568 (S.D.N.Y. Mar. 30, 2007) (Conner, J.). Accordingly, we recite only the facts relevant to our resolution of the present issue and such background facts as are helpful in providing context.

Defendant is a New York corporation that provides various services to airlines that operate out of Westchester County Airport, including catering and cleaning services, ground crew assistance and gate boarding and bag loading services. *See id.* at *1. On April 21, 1986, GHI hired plaintiff as a customer service agent and promoted her to Operations Manager in January 1996. *See id.* In 1987, plaintiff was diagnosed with chronic renal failure which ultimately developed into end-stage renal disease. *See id.* John Barrella, plaintiff's supervisor, was responsible for handling plaintiff's requests for medical leave and other medical accommodations. *See id.* From 1987 to the spring of 2003, defendant repeatedly and consistently granted plaintiff's requests for accommodation, including substantial periods of leave. *See id.* at *2-4.

On March 18, 2003, plaintiff again requested medical leave due to her kidney condition, this time for three months. *See id.* at *3. Defendant granted her leave under the FMLA until June 18, 2003. *See id.* at *3-4. According to plaintiff, on April 22, 2003, she informed Barrella that she was ready to return to work. *See id.* at *4. She claims that he indicated that they "'need[ed] to talk'" and "'there were "other things [she] needed to do before [she] returned . . . ."'"[1] *See id.* Plaintiff alleges that she requested a meeting to discuss her employment situation and Barrella said that he first had to talk with GHI's individual owners. *See id.* Plaintiff claims that Barrella never contacted her, and

---

[1] In April 2003, one of the three Operations Managers resigned, leaving only two managers to perform the responsibilities that typically required four people. *See id.* at *4. As a result, defendant was forced to promote two individuals to the position of Operations Manager to fill the vacancies. *See id.*

2

that she called him on two occasions thereafter to follow up. *See id.* According to plaintiff, Barrella requested that she submit documentation from her treating physician providing her medical clearance to return to work. *See id.* She claims that Dr. Richard Pisano, her internist, sent defendant a letter, dated April 25, 2003, indicating that she was able to work part-time as of April 28, 2003. *See id.* Although it appears that Pisano wrote such a letter, there is no evidence that it was ever sent to defendant, except for plaintiff's unsubstantiated allegation that she called Barrella's office and was told that the office had received it. *See id.* Plaintiff, however, could not identify the person with whom she spoke, and neither plaintiff nor Pisano has personal knowledge that it was ever sent to defendant. *See id.* The letter itself is unaddressed. *See id.*

Barrella has a different recollection. According to him, on April 22, 2003, plaintiff called him and updated him on her health status and indicated that she might be able to return to work in a month. *See id.* at *5. He claims that he informed her that she would need to provide medical documentation clearing her to work. *See id.* According to Barrella, plaintiff never provided him with any medical documentation and did not indicate that she would be able to return to work at any specific time. *See id.* Barrella claims that plaintiff did not contact him again until June 30, 2003, approximately two weeks after her medical leave to June 18, 2003 had expired. *See id.*

Both parties agree, however, that, on June 30, 2003, plaintiff informed Barrella that she had become extremely ill again and required an indefinite period of medical leave. *See id.* At that time, defendant terminated plaintiff's employment. *See id.* Since the commencement of this litigation, plaintiff has conceded that she was unable to work from June 30, 2003 to July 2004. (*See, e.g.*, Krakower Decl. Supp. Def. Mot. *In Limine*, Ex. A (Pl. Ltr. 6/25/07).)

After the close of discovery, defendant moved for summary judgment seeking dismissal of

3

plaintiff's claims under the FMLA and NYSHRL. In our prior Opinion and Order, we held that, as of April 28, 2003, plaintiff was on authorized medical leave under the FMLA and would have been entitled to reinstatement if she had been able to resume work at that time *See Roberts*, 2007 WL 2071568, at *11. Accordingly, we denied defendant's summary judgment motion because a genuine issue of material fact existed as to whether plaintiff requested and was able to return to work in April of 2003. *See id.* at *12. In addition, plaintiff's NYSHRL claim survived summary judgment because a genuine issue of material fact existed as to whether defendant's alleged failure to reinstate plaintiff in April 2003 was discriminatory. *See id.* at *14. However, we dismissed plaintiff's claims under the NYSHRL arising from her termination on June 30, 2003, as defendant did not have a legal obligation to provide plaintiff with an indefinite period of leave. *See id.* at *14-15.

Thereafter, defendant requested that the Court limit plaintiff's damages for lost wages to the time period of April 28, 2003 to June 30, 2003, after which time plaintiff was unable to work. In a letter dated June 25, 2007, plaintiff objected to defendant's request, contending that her claim under the NYSHRL "seeks damages for lost wages throughout the period of time whe[n] she was both able and unable to work under the theory that the impact of [d]efendant's unlawful action worsened her medical condition rendering [her] unable to work." (*See* Krakower Decl. Supp. Def. Mot. *In Limine*, Ex. A (Pl. Ltr. 6/25/07).) She maintained that, "[b]ut for [d]efendant's actions[, p]laintiff would have been able to continue her employment."[2] (*See id.*)

---

[2] In the June 25, 2007 letter, plaintiff appears also to argue that she is entitled to lost wages under the FMLA for the time period beginning in July 2004 at which time she was able to resume work. Although on the basis of the court conference on September 10, 2007, we believe that plaintiff no longer takes this position, plaintiff clearly cannot collect lost wages under the FMLA for any time period after June 30, 2003. Plaintiff would have become ineligible for leave under the FMLA by the time that she was able to resume work in July 2004 and therefore would not have been entitled to reinstatement. Accordingly, she could not have incurred any lost wages after that time.

4

Defendant thereafter requested permission to file this motion *in limine* seeking to preclude plaintiff from submitting evidence at trial pertaining to this damage theory.  Defendant argues that plaintiff had ample opportunity to determine her damage theory, failed to do so throughout the course of discovery and the extensive motion practice, and only raised the theory shortly before a scheduled trial.  Defendant argues that it would be severely prejudiced if plaintiff were allowed to introduce evidence of this theory at trial.  We agree.

## DISCUSSION

When determining whether a plaintiff may introduce at trial evidence of a newly advanced damage theory, courts in this Circuit have applied the same factors relevant to a request for leave to amend a complaint pursuant to FED. R. CIV. P. 15(a).  *See Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001, 2002 WL 31856951, at *3 (S.D.N.Y. Dec.19, 2002) (citing *Gateway Coal Co. v. Int'l Union, United Mine Workers of Am.*, 849 F. Supp. 398, 406 (W.D. Pa. 1994); *see also*

---

However, she may be entitled to lost benefits for a limited period of time after June 30, 2003.  As we held in our prior Opinion and Order, it is unclear whether plaintiff was entitled to additional leave under the FMLA at the time of her request on June 30, 2003.  *See Roberts*, 2007 WL 2071568, at n.18 ("For example, if plaintiff had requested reinstatement on April 28, 2003 and then required medical leave commencing on May 1, 2003 until June, she would have exhausted her FMLA leave by June 18, 2003.  (*See* Def. Rule 56.1 Stmt., Ex. R.)  However, if, hypothetically, plaintiff had requested reinstatement on April 28, 2003 but did not require medical leave until June 1, 2003, she still could have been eligible for FMLA leave as of June 18, 2003.").  If plaintiff were in fact entitled to leave on June 30, 2003, she would be entitled to damages equal to the value of any employment benefits that she lost as a direct result of her termination.  For example, the FMLA requires employers to provide employees with continued medical coverage for the duration of leave at the level and under the conditions that the employee would have received if not on leave.  *See* 29 U.S.C. § 2614.  However, plaintiff would be entitled to such damages only for the amount of time during which she was entitled to leave under the FMLA after June 30, 2003 – a maximum of six weeks.  *See Roberts*, 2007 WL 2071568, at *11 ("As of April 28, 2003, plaintiff took approximately six weeks of leave in 2003 and therefore was entitled to take approximately six additional weeks of FMLA leave during the remainder of the calendar year.").

*Austrian Airlines Oesterreichische Lufverkehrs A.G. v. UT Fin. Corp.*, No. 04 Civ. 3854, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005). Such factors include undue delay, prejudice to the opposing party, bad faith on the part of the party asserting the theory and the futility of the damage theory sought to be proved. *Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007). In the present case, these factors militate in favor of precluding plaintiff from introducing evidence at trial of her new damage theory.

Plaintiff waited until shortly before trial to claim that defendant's alleged discriminatory acts caused her medical condition to worsen, thereby rendering her unable to work after June 30, 2003. *See UT Fin. Corp.*, 2005 WL 977850, at *2 ("The Court will not allow plaintiff . . . to assert this new, additional damage theory at the eleventh hour."). Plaintiff filed her Complaint on June 24, 2004, and it was not until June 25, 2007 – three years later and approximately three months prior to trial – that plaintiff asserted this new theory. It was not alleged in the Complaint, nor raised during discovery nor mentioned in any of plaintiff's motion papers, nor at any of the numerous court conferences held in this case.

Specifically, plaintiff failed to disclose these damages in her Rule 26(a)(1)(C) initial disclosures. This is alone sufficient to preclude her from submitting evidence of it at trial. *See UT Fin. Corp.*, 2005 WL 977850, at *2 (precluding the plaintiff from offering evidence of a damage theory that it did not disclose in its Rule 26(a)(1)(C) initial disclosures). Moreover, plaintiff failed to disclose the theory or any evidence of it during the entire discovery phase. During her own deposition, she testified that she requested leave on June 30, 2003 because she "took ill again. It's very common with a dialysis patient. . . . I wasn't consistently strong. I was still dealing with a lot of these complications, with the blood pressure and I was under medication for the bleeding ulcer.

I was having a little side effect if I recall." (*See* Krakower Reply Decl. Supp. Def. Mot. *In Limine*, Ex. E (Pl. Dep. at 120).) Never once did she suggest that defendant's alleged discriminatory acts worsened her condition, even when asked specifically to describe the nature of her condition and the damages she was seeking. (*See id.*) Similarly, in plaintiff's response to defendant's interrogatory calling for a detailed description of her damages, she failed to disclose any information that could have put defendant on notice that she was intending to show that defendant's alleged discriminatory acts caused or contributed to her inability to work after June 30, 2003. (*See id.*, Ex. B (Pl. Resp. Interrog. No. 18).) *See Gilvin v. Fire*, No. 99-CV-530, 2002 WL 32170943, at *3 (Dist. D.C. Aug.16, 2002) ("[B]ecause [p]laintiff failed to provide [d]efendant with a computation of his damages for expense restrictions and failed to provide any factual basis whatsoever for the claim, [p]laintiff may not present evidence at trial of those damages."). The depositions of both plaintiff's treating physicians were also devoid of any suggestion of such causation of plaintiff's illness. Indeed, plaintiff has not retained a medical expert and has offered no expert evidence as to the effects of defendant's alleged discriminatory acts on her kidney condition. (*See* Krakower Reply Decl. Supp. Def. Mot. *In Limine*, Ex. B (Pl. Resp. Interrog. No. 15).) *See ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 416, 421 (S.D.N.Y. 1999) (precluding evidence of monetary damages when the plaintiff repeatedly failed to articulate any basis for them during discovery).

Moreover, in both plaintiff's oppositions to defendant's motion to dismiss and motion for summary judgment, she never asserted or provided evidence relating to the theory that defendant's alleged discriminatory acts worsened her medical condition, rendering her unable to work after June 30, 2003. Even in her own affidavit submitted in opposition to defendant's motion for summary judgment, she made no mention of this theory and simply stated that, "[i]n late June 2003, [she]

7

became ill again . . . ." (S*ee* Krakower Reply Decl. Supp. Def. Mot. *In Limine*, Ex. H (Pl. Aff. ¶ 14).) Indeed, plaintiff has consistently alleged that her kidney condition and the effects of dialysis were the sole cause of her inability to work. Plaintiff did not assert her new theory until defendant requested that the Court limit her damages for lost wages to the period of April 28, 2003 to June 30, 2003. *See Point Prods. A.G.*, 2002 WL 31856951, at *4 (precluding evidence of a damages theory when the plaintiff "waited more than two years and ten months after responding to an interrogatory addressed to its damages theory before it even initiated its effort to rely on a new theory of damages. By the time [plaintiff] broached this new approach, discovery had been completed and trial was scheduled. In fact, the issue arose in the context of an *in limine* motion directed to [plaintiff's] lost profit methodology.").

Plaintiff argues, however, that the Complaint should have put defendant on notice of these damages because it alleged that, "[u]pon information and belief, [p]laintiff believes her bleeding ulcer is a result of the stress caused by her job." (*See* Complt. ¶ 66.) We disagree. This allegation does not relate to the cause of her renal disease, but to the cause of her ulcer – namely, working a full time job while suffering from such disease and undergoing dialysis.[3]

Plaintiff also contends that her deposition testimony should have put defendant on notice. However, she cites no specific portion of her deposition, and our review of the record reveals no testimony even hinting at this damage theory. While she vaguely mentioned that her condition was worsened due to the stress caused by what she perceived was occurring at work, (*see* Zabell Decl. Opp. Def. Mot. *In Limine*, Ex. A (Plaintiff Dep. at 44, 94, 110-11), when specifically testifying

---

[3] Similarly, plaintiff's allegation that defendant caused her "physical anguish" is also insufficient to put defendant on notice of her new damage theory. (*See* Complt. ¶¶ 74, 84.)

8

regarding her damages, she never suggested that defendant's alleged discrimination contributed to her inability to work after June 30, 2003.

Because plaintiff did not allege this theory or produce any evidence of it during the past three years, defendant had no reason to conduct any discovery relating to whether the alleged discrimination worsened her medical condition, rendering her physically unable to work after June 2003. Clearly, if we were to allow plaintiff to pursue this theory at trial, we would have to provide defendant with sufficient time to conduct the appropriate discovery. Not only would defendant want to retain a medical expert, which would cause it to incur further cost in expert and legal fees, it would be required to modify its defense strategy. To require defendant to incur additional costs and to change its strategy on the eve of trial because plaintiff has concocted a new theory three years into the litigation is simply not fair and would, in a real sense, unduly prejudice defendant. *See, e.g.*, *Point Prods. A.G.*, 2002 WL 31856951, at *4.

We are acutely sympathetic with plaintiff's valiant effort to work despite a grave and debilitating illness. But during extensive discovery plaintiff has developed no evidence whatever of discriminatory treatment by defendant, much less that any such treatment exacerbated her medical condition. Quite the contrary, it reflects a history of compassionate accommodation to her diminished strength and stamina and her need for dialysis and other medical ministrations during working hours. If plaintiff's new theory of damages had any apparent merit, we might be moved to reopen the discovery period to allow development of expert opinion evidence relating to it, but we believe it is devoid of any real merit or likelihood of acceptance by the trier of fact.

9

## CONCLUSION

For the foregoing reasons, defendant's motion *in limine* to exclude evidence at trial relating to plaintiff's claim that her medical condition was worsened by defendant's alleged discriminatory acts is granted. Further, it is ordered that plaintiff is precluded from submitting evidence at trial of damages representing lost wages after June 30, 2003.


SO ORDERED.
Dated:  White Plains, New York
        September 20, 2007

                                                    _____
                                                    William C. Conner
                                                    Sr. United States District Judge